IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SYLVESTER MARSHALL, | § | |
| Petitioner, | § | |
| | § | |
| V. | § | Civil Action No. 4:14-CV-947-O |
| | § | |
| RODNEY W. CHANDLER, Warden, | § | |
| FCI-Fort Worth, | § | |
| Respondent. | § | |

**OPINION AND ORDER**

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by Petitioner, Sylvester Marshall, a federal prisoner who was confined at the Federal Correctional Institution (FCI-Fort Worth) in Fort Worth, Texas, at the time petition was filed, against Rodney W. Chandler, Warden of FCI-Fort Worth, Respondent. After considering the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

**I. BACKGROUND**

Petitioner is serving a 120-month term of imprisonment for his 2009 conviction in the United States District Court for the Southern District of Alabama for conspiracy to possess with intent to distribute crack cocaine. J., United States v. Marshall, Criminal Action No. 1:08-cr-142-KD-B, ECF No. 32. By way of this petition, Petitioner challenges a disciplinary proceeding conducted at FCC-Yazoo City in Mississippi involving incident report No. 2428924. The incident report charged Petitioner with possession of a hazardous tool, a cell phone, a Code 108 violation. Resp't's App. 30, ECF No. 8. Following a hearing, the disciplinary hearing officer (DHO) found Petitioner committed the prohibited act as charged. *Id.* at 31. Petitioner's punishment included loss of various privileges, disciplinary segregation, and loss and forfeiture of good time credits. *Id.* at 32. Petitioner seeks

reinstatement of his good time credits. Pet. 7, ECF No. at 11.

## II. EXHAUSTION

The record contains no evidence through exhibits that Petitioner appealed the DHO's decision however he asserts that he "attempted to obtain relief by accessing the Bureau of Prison's Administrative Remedy process, but he has recently been denied at the Central Office level, the last possible venue for Administrative Relief." Pet. 2, ECF No. 1. Respondent does not address the issue. Thus, the Court assumes, without deciding, that Petitioner exhausted his administrative remedies to no avail.

## III. DISCUSSION

In the context of a prison disciplinary proceeding resulting in the loss of good time credits, constitutional due process requires that a prisoner at a minimum receive (1) written notice of the charges against him at least twenty-four hours prior to the disciplinary hearing, (2) an opportunity to call witnesses and present documentary evidence in his defense, and (3) a written statement from the factfinder that includes the evidence relied on and the reasons for the disciplinary action taken. *Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974). In addition, there must be "some evidence" in the record that supports the findings made at the hearing. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454-56 (1985); *Richards v. Dretke,* 394 F.3d 291, 293 (5th Cir. 2004).

Incident report No. 2428924 alleges that on April 4, 2013, prison staff became aware of the following facts:

> On December 13, 2012 at approx. 2:05 pm., a cell phone was found at the Magnolia Camp. The cell phone was sent off by the SIS department to the forensic lab. On April 4, 2013 at approximately 1:00pm [sic] after reviewing the documentation that was received from the lab r [sic] on April 3, 2013, it was concluded that YOU inmate Marshall, Silvester, Reg. No. 10367-003 was once in possession of or used the cell

> phone that was found on December 13, 2012 at the Magnolia Camp. Several numbers that were detected on the cell phone are currently on your phone list and were on your phone list prior to that cell phone being found. Specifically telephone numbers (334)207-2119 and (215)362-6085 were two of the many numbers that were detected on the phone that were on your phone list. Therefore you are receiving this incident report for code 108 (Possession, manufacture, or introduction of a hazardous tool (Cell phone)[)].

Resp't's App. 9, ECF No. 8.

Prison officials notified Petitioner of the disciplinary charges on April 4, 2013. *Id.* On April 8, 2013, prison officials notified Petitioner that a hearing would be held at a date to be determined, and he was advised of his rights at the hearing in writing. *Id.* at 28-29. The disciplinary hearing was held on April 12, 2013. *Id.* at 30. Petitioner therefore received at least twenty-four-hour advance notice of the charges. At the hearing, Petitioner was offered but declined a staff representative and was given an opportunity to make a statement, present evidence, and call witnesses on his behalf. *Id.* On May 10, 2013, Petitioner was provided a copy of the DHO's decision and reasons for the action taken and was notified of his right to appeal. *Id.* at 30-33.

The DHO stated in his report that the "specific evidence" relied upon to support his guilty finding included the following (all punctuation and grammatical errors are in the original):

> As evidence, the DHO relied on the written eyewitness account of the reporting staff member, SIS Support Technician D. Lott, who stated on December 13, 2013, at approximately 2:05 p.m., a cell phone was found at the Magnolia Camp. The cell phone was sent off by the SIS Department to the forensic lab. On April 4, 2013, at approximately 1:00 p.m., after reviewing the documentation that was received from the lab on April 3, 2013, it was concluded that you were once in possession of or used the cell phone that was found on December 13, 2012, at the Magnolia Camp. Several numbers that were detected on the cell phone are currently on your phone list and were on your phone list prior to that cell phone being found. Specifically telephone numbers 334-207-2119 and 251-362-6085 was two of the many numbers that were detected on the phone that were also on your phone list.
>
> The DHO considered your denial of possessing a cell phone, Code 108. When asked

if you wanted to make any further comment, you stated "Me and Lett are from the same neighborhood. We know some of the same people. My Grandmother was married to his Uncle prior to the marriage she is in now. We dated some of the same girls and we were from the same neighborhood. I did not use that phone."

As evidence, the DHO also relied on records (4 pages) from Final Mobile Forensics reflecting numerous phone numbers dialed from the confiscated cell phone, which included phone numbers 334-207-2119 and 251-362-6085. Also, reviewing copies of TRUVIEW Inmate Center Report (8 pages) reflect the phone history from 03-01-2012 through 04-04-2013 for Register Number 10367-003 (your Register Number), which reflect phone numbers 334-207-2119 and 251-362-6085 were on your approved phone list and listing both numbers as belonging to "Spouse".

As evidence, the DHO also considered your statement during the investigation on April 4, 2013. Specifically, the Investigating Lieutenant, J. Hutchins, documented that you stated "The number on the list is the numbers I called." Although you did not specifically admit to possessing the cell phone in question nor using one, you did admit to calling the phone numbers listed on your incident report.

The DHO also consider your statement during the Unit Discipline Committee (UDC) hearing on April 8, 2013, wherein you state "I did not use the phone. We from the same neighborhood and know some of the same people. I gave Lett my phone book, so he could see the numbers of some of the people I know" to the UDC Chairman, Case Manager F. Griffin.

The DHO considered the statements of your inmate witness, but it was not found to present enough evidence to relieve you of responsibility in this case. Inmate Michael Lett, Register Number 09224-003, provided the following statement: "We call some of the same numbers. Some of the people we know, I didn't remember their numbers. Inmate Marshall gave them to me." Ultimately, the DHO did not believe your assertion, nor inmate Lett's testimony, that inmate Lett called the two numbers listed on your incident report. The DHO explained to you during the hearing that he crossed referenced both phone numbers from your incident report (334-207-2119 and 251-362-6085) with inmate Letts approved phone list for numbers that were on his list from March 1, 2012, through April 4, 2013. Neither of these two phone numbers was on his list. The DHO did ask inmate Lett during this hearing why those two numbers were not on his list if he was in the habit of communicating with those numbers, to which he replied that he did not have enough time to add them to his approved phone list. As the DHO explained to you, he believed that if inmate Lett was in fact calling these numbers on a cell phone, he would have also placed them on his approved phone list eventually. The DHO noted that as of April 4, 2013 (the date inmate Letts phone number list report was generated), even though the communications identified in your incident report occurred on November 26, 2012, and December 12, 2012, inmate Lett

> never added either of the two phone numbers to his approved phone list, even though he had ample time to do so since the cell phone is question was found on December 13, 2012. Furthermore, your own approved phone list reflects phone numbers 334-207-2119 and 251-362-6085 as belonging to "Spouse". This is information that you would have entering into the phone system when you added these numbers to your phone list.
>
> The DHO noted that even though you were not found in physical possession of a cell phone, because you had used a cell phone to make the calls listed on the forensic report to numbers that are on your approved phone list, the DHO deduced that you had to have possessed a cell phone to do so. By having a cell phone, you possessed a tool deemed hazardous by the Bureau of Prisons. Cellular telephones can allow an inmate to plan an escape without the chance of staff monitoring the call. You would also be able to make threats to civilians, or plan other potential criminal acts in the local community, which could potentially harm by standing civilians in the community. The potential to accomplish these acts or crimes was there because a cellular telephone call, from a federal prison, would have been unmonitored. For all the reasons listed, it is not intended that inmates make telephone calls which are not monitored, or which do not pass through the inmate telephone monitoring system. The possession of a cellular telephone, or equipment which furthers or enables that possession, as an inmate in a federal prison, constitutes possession of a tool which is hazardous.
>
> Policy makes you responsible for everything on your person, in your personal property, and in your living quarters (cubical). Specifically, Program Statement 5270.09, Inmate Discipline Program, Appendix C, page 39, states that it is your responsibility to keep your area free of contraband.
>
> Also, upon your commitment to any Bureau of Prisons facility, you participate in the institution's Admission and Orientation (A&O) program wherein you are advised of Bureau of Prisons (BOP) rules and regulations and your responsibility to abide by these rules. You were also provided an A&O handbook upon your entry into this facility which further details prohibited acts. Your participation in A&O and knowledge of BOP rules and regulations further establishes your culpability.
>
> Accordingly, it is the finding that SIS Technician D. Lott's report (coupled with the evidence attached to the incident report), being more credible than your denial, carries the greater weight of evidence, and that shows that you committed the prohibited act as charged.

*Id.* at 31-32.

In this petition, Petitioner claims that in a disciplinary hearing the proper standard of proof

is a "preponderance of evidence,"[1] that the evidence was insufficient to support the DHO's finding, and that the DHO should have further investigated the charges. Pet. 5-6, ECF No. 1.

The DHO's decision must be supported by "some evidence." *Hill,* 472 U.S. at 454-55; *Wolff,* 418 U.S. at 563-66. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. *Hill*, 472 U.S. at 455. The relevant inquiry is whether there is any evidence in the record that could support the conclusion reached by the DHO. *Id.* at 455-56. In this case, there was some evidence to support the DHO's conclusion that Petitioner committed the prohibited act. Not only did the DHO consider the incident report, which standing alone can satisfy the "some evidence" standard, he considered other documentary exhibits, including the forensic reports, Petitioner's statement, and Lett's testimony. *Hudson v. Johnson*, 242 F.3d 534, 536-37 (5th Cir. 2001). Credibility decisions are left to the DHO. *Adams v. Gunnell,* 729 F.2d 362, 370 (5th Cir. 1984). Furthermore, the nature and extent of an investigation in a prison disciplinary proceeding is within the discretion of prison authorities.

## IV. CONCLUSION

For the reasons discussed herein, Petitioner's petition is DENIED. A certificate of appealability is also DENIED.

**SO ORDERED** on this 1st day of February, 2016.

Reed O'Connor
UNITED STATES DISTRICT JUDGE

[1]Petitioner relies on *Goff v. Dailey,* 789 F. Supp. 978 (SD Iowa 1992), for this proposition, however on appeal the decision was reversed on this issue. 991 F.2d 1437 (1993).